No. 04-99-00506-CR



Juan RAMOS,


Appellant



v.



The STATE of Texas,


Appellee



From the County Court at Law Number 1, Bexar County, Texas


Trial Court No. 666904


Honorable Alfonso E. Alonso, Jr., Judge Presiding



Opinion by: Karen Angelini, Justice 


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: November 22, 2000


AFFIRMED


 A jury found that Juan Ramos committed the offense of driving while intoxicated. Upon the
jury's recommendation, the trial court placed Ramos on community supervision and imposed a
$1,000 fine. Ramos attacks his convictions in two issues. He claims there is factually insufficient
evidence to support the charged offense and, that the trial court abused its discretion by allowing the
State's expert witness to testify. We affirm the trial court's judgment.

Factual Background

 The State relied on the testimony of three San Antonio police officers to prove its case.
Officer Brad Sullivan was the first to testify. According to Sullivan, Juan Ramos and another couple
were involved in a car accident on June 20, 1997, at approximately 2:30 in the morning. Sullivan was
dispatched to the accident. Sullivan first spoke to the couple and then to Ramos. As he approached
Ramos, Sullivan noticed Ramos's eyes were bloodshot, his speech was slurred, he had trouble
standing, and he was holding on to his truck for support. Sullivan asked Ramos if he had been driving.
Ramos replied "yes." Ramos also admitted to having consumed four or five beers that evening. 

 Sullivan, a certified standardized field sobriety test administrator, suspected that Ramos was
intoxicated and administered a variety of field sobriety tests to confirm his suspicion. He first
conducted the Horizontal Gaze Nystagmus ("HGN") Test and detected all six signs which indicate
intoxication. Sullivan then had Ramos perform the one-leg stand, although Ramos previously had
broken his toe. Ramos failed by placing his foot on the ground three times and using his arms for
balance. Ramos was also unsuccessful at the finger count, as well as the walk and turn, during which
he stumbled and staggered, didn't walk heel to toe as instructed, and used his arms to maintain
balance. Finally, Ramos attempted the Romberg Balance Test, but he improperly estimated the time
and was incapable of maintaining his balance. Based on his observations, Sullivan determined that
Ramos had lost the normal use of his mental and physical faculties and placed him under arrest. 

 Officer Richard Cuellar was also dispatched to the accident one minute after the call reporting
the accident came in at 2:29 a.m. Cuellar estimated that often four or five minutes pass between the
time an accident occurs and the time it is reported and, that he arrived at the accident scene at 2:34
a.m. After speaking with Ramos, Cuellar determined Ramos was "a bit intoxicated and had bloodshot
eyes and was unsteady when he walked." After examining the debris that remained in the road, as well
as the cars' positions after the accident, Cuellar concluded that Ramos was at fault, and he attributed
the accident to the fact that Ramos was driving under the influence of alcohol. Cuellar did recognize,
however, that the intersection where the accident occurred was a "blind turn."

 San Antonio Police Officer Michael Heim, a certified intoxilizer operator, conducted Ramos's
intoxilizer examination. Heim, prior to administering the test, observed Ramos for approximately
fifteen minutes. He noticed that Ramos's speech was slurred, his eyes were bloodshot, his breath
smelled of alcohol and he was unsteady on his feet. Heim, like Sullivan, also conducted an HGN test
and found Ramos to be intoxicated. 

 George Allen McDougall, Jr., the Bexar County Breath Test Technical Supervisor, examined
and testified about Ramos's intoxilizer results. McDougall found that Ramos's breath test results
showed a blood alcohol level of 0.135 at 3:57 a.m. and 0.132 at 3:59 a.m. Based on the test results,
as well as McDougall's opinion that every person's ability to drive is impaired when the blood alcohol
level reaches .08, McDougall concluded Ramos had lost the normal use of his mental and physical
faculties for purposes of operating a motor vehicle. Using retrograde extrapolation, McDougall
estimated that Ramos's blood alcohol count was likely between .18 and .14 an hour and a half before
the breath sample was collected. 

 In his defense, Ramos relied upon the testimony of John Macias Martinez. Martinez, along
with Ramos, attended a meeting the evening of the accident. Martinez spoke to Ramos and detected
no signs that Ramos was intoxicated during the meeting. Martinez and Ramos met at a bar after the
meeting. While they were there, Martinez did not see Ramos drink anything, nor did he detect any
signs that Ramos was intoxicated. Martinez left at 12:30 a.m. and had no knowledge of what Ramos
did between the time he left and 2:30 a.m.

Factual Sufficiency In his first issue, Ramos attacks the factual sufficiency of the evidence supporting the jury's
finding. The jury found Ramos guilty of driving while intoxicated under Penal Code, section 49.04,
which states that "[a] person commits an offense if the person is intoxicated while operating a motor
vehicle in a public place." Tex. Pen. Code Ann. § 49.04(a) (Vernon Supp. 2000). Ramos asserts
there is no evidence "establishing the time [he] was driving or the amount of time that passed before
[he] submitted to the intoxilizer test." And, he complains there is no evidence to show that he was
operating a motor vehicle at the time his blood alcohol concentration was at least .10. 

Standard of Review:

 In determining whether there is factually sufficient evidence to support a jury finding, we view
all of the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 128 (Tex. Crim. App. 1996). We compare the
evidence that tends to prove the existence of a disputed fact with the evidence that tends to disprove
that fact. Johnson, 23 S.W.3d at 7. Our review is the same for both direct and circumstantial
evidence. Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), overruled on other grounds,
Paulson v. State, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000) (jury instruction giving "beyond a
reasonable doubt" or "reasonable doubt" definitions no longer required). We defer to the jury's
conclusion, unless "proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof." Johnson, 23 S.W.3d at 8, 11.

Discussion:

 Although there is no direct evidence establishing the exact time Ramos was driving, there is
sufficient circumstantial evidence to establish he was operating his truck shortly before the accident
occurred. Ramos claims that the State had to speculate how much time had passed between the
accident and the time the accident was reported. However, the accident was reported at 2:29 a.m.
Officer Cuellar testified that generally, only four or five minutes pass between the time an accident
occurs and the time it is reported. Given Cuellar's testimony and the time the accident was reported,
the jury had evidence before it to conclude that the accident occurred at approximately 2:25 a.m.

 Ramos additionally asserts that Officer McDougall's testimony is also so weak as to amount
to factually insufficient evidence. Specifically, he claims McDougall guessed the time Ramos was
driving, invalidating his extrapolation evidence. 

 McDougall testified about Ramos's intoxilizer results. He concluded that, at 3:52 a.m. and
3:57 a.m., Ramos's blood alcohol content was above the legal limit. This evidence is enough to allow
the jury to conclude Ramos was drunk while he was operating a motor vehicle. Even "unextrapolated
breath-test results, ... are probative evidence for the trier of fact to consider and weigh." Mireles v.
Texas Dep't of Public Safety, 9 S.W.3d 128, 131 (Tex. 1999) (citing Forte v. State, 707 S.W.2d 89,
94-95 (Tex. Crim. App. 1986)); Hartman v. State, 2 S.W.3d 490, 493-94 (Tex. App.-San Antonio
1999, pet. ref'd). We, therefore, find the jury had before it factually sufficient evidence to conclude
Ramos was guilty of D.W.I


Expert Testimony

 In his second issue, Ramos contends the trial court erred in allowing the State's expert witness
to testify. Specifically, he claims the State's expert witness failed to fulfill the three requirements
necessary to the expert testimony's admissibility.

Standard of Review:

 To be admissible, expert testimony must be both sufficiently reliable and relevant to aid the
jury in reaching accurate results. Hartman v. State, 946 S.W.2d 60, 62 (Tex. Crim. App. 1997).
Evidence based on scientific theory is reliable if the underlying scientific theory is valid and the
technique implementing the theory is valid and was properly applied. Id. The proponent of the
evidence carries the burden, which must be established by clear and convincing evidence. Tex. R.
Evid. 702; Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). 

 We review the admission of scientific evidence under an abuse of discretion standard. Kelly,
824 S.W.2d at 574. That is, if the trial court's ruling was within a zone of reasonable disagreement,
then we will not disturb its ruling. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990); Avila v. State, 18 S.W.3d 736, 738 (Tex. App. - San Antonio 2000, no pet.).

Discussion:

 Here, Ramos asserts that both the scientific theory of retrograde extrapolation and the
technique applying the theory were invalid. Specifically, he complains that Officer McDougall was
unable to testify as to "the type of alcohol consumed, the rate of consumption, what [Ramos] had
eaten that day, what time of day [Ramos] may have stopped drinking, what time [he] was driving,
what [his blood alcohol content] may have been at the time he was driving, [and] whether [Ramos]
was in the absorption or elimination stage when he submitted to the intoxilizer exam..." This level of
specificity, however, is not required to validate extrapolation evidence. McDougall explained that
although he could not provide the exact level of alcohol concentration in Ramos's blood at the time
of the accident, he could provide a reliable blood alcohol range. We have repeatedly held that "given
McDougall's impeccable qualifications, ... and the limits which McDougall place[s] on his
opinion[s]," the trial court could not have abused its discretion in admitting McDougall's testimony.
See Mata v. State, 13 S.W.3d 1, 2 (Tex. App. - San Antonio 1999, pet. granted); Hartman, 2 S.W.2d
at 493-94.

Intoxication Charge

 In addition, we note that Ramos was charged under both definitions of "intoxicated" as set
forth in the Penal Code - "not having the normal use of mental or physical faculties by reason of the
introduction of alcohol" and "having an alcohol concentration of 0.10 or more." Tex. Pen. Code
Ann. § 49.01 (2)(A) (Vernon Supp. 2000); Acts of June 19, 1993, 68th Leg., 2d C.S., ch. 303, 1993
Tex. Gen. Laws 3696 (amended 1999) (current version at Tex. Pen. Code Ann. § 49.01(2)(B)
(Vernon Supp. 2000)) (changing legal blood alcohol content limit from 0.10 to 0.80). Accordingly,
even if either of Ramos's grounds of error had merit, the Officers' observations of Ramos's behavior
on the night of the accident and their testimony based upon those observations was sufficient evidence
to show Ramos had lost the use of his mental or physical faculties for purposes of driving. See
Hartman, 2 S.W.3d at 494. Therefore, neither of Ramos's grounds of error, if valid, would require
a reversal.


 We, accordingly, overrule Ramos's issues and affirm the trial court's judgment.


 Karen Angelini, Justice 

DO NOT PUBLISH