### Ricardo Dante AVILA, Appellant,

### v.

### The STATE of Texas, Appellee.

### No. 04–98–00979–CR.

Court of Appeals of Texas,
San Antonio.

March 8, 2000.

---

1. William Roberts is a child who is the subject of a Suit Affecting the Parent–Child Relationship brought by the Texas Department of Protective and Regulatory Services.

Christian T. Souza, Roberto R. Alonzo, Rich & Alonzo, Dallas, for appellant.

Robert Lee Little, Asst. Dist. Atty., Eagle Pass, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### NATURE OF THE CASE

A jury found that Ricardo Dante Avila committed the offense of sexual assault and sentenced him to four years and six months confinement. He challenges his conviction in six issues. In his first two issues, Avila asserts the evidence is legally and factually insufficient to support his conviction. In his third issue, he alleges the trial court abused its discretion in admitting the results of deoxyribonucleic acid (DNA) testing. In his final three issues, Avila challenges the admission of the testimony of a victim of a separate rape. We address Avila's issues in an order different than that presented in his brief in order to offer a more logical explanation of our disposition in this case. We reverse and remand this case to the trial court for further proceedings.

### FACTUAL BACKGROUND

On March 2, 1997, the complainant went to Crystal City with her older sister and a friend. After the three girls checked into a motel, the two older girls crossed the border into Mexico. The complainant remained in Crystal City and spent the evening driving around town with friends.

After dropping off her friends at approximately 2:00 a.m., the complainant saw Avila flash his headlights at her. Avila mistook the complainant for her older sister. However, once he realized who was actually driving the car, Avila waved the complainant on.

The complainant returned to her motel room and prepared herself for bed. Just before she fell asleep, she heard a honk outside. She peered around the curtain to see who it was, and realizing it was Avila, ignored him. The complainant saw him again approximately ten minutes later on the side of the motel, as if he was heading for the road. She then went to sleep.

The complainant was awakened suddenly by a slap to her face. A man had entered her room. He turned her over onto her stomach and raped her. The complainant never saw the perpetrator.

After the man left, the complainant waited a little while and then left the motel. She went to a friend's house and then to see her mother, who took her to the police station. After explaining to the police what happened, she went to the hospital, where a rape kit was administered.

### ADMISSIBILITY OF THE EVIDENCE

In three issues, Avila challenges the admission of DNA and extraneous offense evidence against him. First, he complains the trial court abused its discretion in admitting the results of DNA testing because

the State did not sufficiently establish a chain of custody to support that evidence. He also contends the trial judge's admission of extraneous offense evidence to prove identity was erroneous because the extraneous offense was not substantially similar to the charged offense. Finally, Avila asserts that the extraneous offense evidence is not relevant and its probative value was substantially outweighed by the danger of unfair prejudice.

## Standard of Review

 The admission of evidence is a matter within the discretion of the trial court. *See Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim.App.1990)(opinion on reh'g). Accordingly, the trial court's admission of evidence is reviewed under an abuse of discretion standard. *See id.* at 379–80. As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *See Rachal v. State,* 917 S.W.2d 799, 807 (Tex.Crim.App.1996); *Montgomery,* 810 S.W.2d at 391. The trial judge does not abuse his discretion when he admits evidence based on the belief that a reasonable juror could find that the evidence has been authenticated or identified. *See Pondexter v. State,* 942 S.W.2d 577, 586 (Tex.Crim.App.1996).

## DNA Evidence

 Avila contends that the trial court erred in admitting the results of DNA testing into evidence. He specifically complains that the State failed to show, by establishing a proper chain of custody, that the DNA testing was based on a comparison of bodily fluids he contributed.

 Texas Rule of Evidence 901 governs authentication. *See* Tex.R. Evid. 901. As a predicate to admissibility, Rule 901 requires a party who offers an item into evidence to establish to the trial judge's satisfaction that the item is what the party represents it to be. *See id.* When the evidence being introduced does not have any unique characteristics, a chain of cus-

tody may be required to prove that the item presented in trial is the same one involved in the events at issue. *See Jackson v. State,* 968 S.W.2d 495, 500 (Tex. App.-Texarkana 1998, pet. ref'd). Likewise, to admit the results of scientific testing, a proper chain of custody must be established. *See, e.g., Smith v. State,* 450 S.W.2d 92, 94 (Tex.Crim.App.1970); *Garner v. State,* 848 S.W.2d 799, 803 (Tex. App.-Corpus Christi 1993, no writ); *Moone v. State,* 728 S.W.2d 928, 930 (Tex.App.-Houston [14th Dist.] 1987, no writ).

 The chain of custody is conclusively established if an officer testifies that he seized the item of physical evidence, tagged it, placed an identifying mark on it, placed it in evidence storage, and retrieved the item for trial. *Lagrone v. State,* 942 S.W.2d 602, 617 (Tex.Crim.App.1997). Similarly, when evidence is sent to a laboratory for analysis, to conclusively establish the chain of custody, the proponent must introduce testimony showing the laboratory handled the evidence the same way. *See Medellin v. State,* 617 S.W.2d 229, 232 (Tex.Crim.App. [Panel Op.] 1981). However, when the State completes the chain of custody from the initial collection of the evidence to inside the laboratory, most questions concerning care and custody, including gaps and minor theoretical breaches, go to the weight of the evidence, not its admissibility. *See Medellin,* 617 S.W.2d at 232; *Silva v. State,* 989 S.W.2d 64, 68 (Tex.App.-San Antonio 1998, pet. ref'd); *Stone v. State,* 794 S.W.2d 868, 870 (Tex.App.-El Paso 1990, no writ).

We have before us the following evidence concerning the chain of custody of the complainant's rape kit, her panties, and Avila's underwear:

1) the hospital in Uvalde conducted a rape kit on the complainant;

2) Avila surrendered his underwear to Officer Erasmo Ramon, who placed the underwear in the evidence room;

3) Officer Ramon transported and submitted the rape kit, the complainant's panties, shorts, and her t-shirt, as well

as Avila's underwear to Javier Flores, a forensic analyst for the Texas Department of Public Safety laboratory.

In this regard, Avila essentially asserts that the State did not prove the initial link in the chain of custody and therefore the trial judge abused his discretion in admitting the results of the DNA analysis. However, Rule 901 only requires a showing that satisfies the trial judge that the item in question is what the State claims. *See* TEX.R. EVID. 901; *Garner v. State*, 939 S.W.2d 802, 805 (Tex.App.-Ft. Worth 1997, pet. ref'd). We conclude the information elicited from the State was enough for the trial judge to have found that the items the State's expert relied upon in drawing his conclusions about the DNA evidence were what they purported them to be. Finding no abuse of discretion, we overrule Avila's third issue.

## Extraneous Offense

■ Additionally, Avila complains that the admission of the testimony of a second rape victim at his trial was an abuse of discretion because it constituted inadmissible extraneous offense evidence.

### *Rule 404(b) Relevancy*

■ Generally, evidence of other offenses is not admissible as evidence of guilt. *See* TEX.R. EVID. 404. However, in *Albrecht v. State*, the Court of Criminal Appeals stated that "[e]vidence of other crimes committed by the accused may be admitted, . . . , where such evidence is shown to be both material and relevant to a contested issue in the case." 486 S.W.2d 97, 100 (Tex.Crim.App.1972). Therefore, evidence of an extraneous offense may be admissible to show identity when identity is an issue in the case. *Lane v. State*, 933 S.W.2d 504, 519 (Tex.Crim.App.1996). However, to be admissible to show identity, there must be a showing that the extraneous offense committed by the accused was so nearly identical in method to the charged offense as to earmark it as the handiwork of the accused. *Bishop v. State*, 869 S.W.2d 342, 346 (Tex.Crim.App. 1993); *Messenger v. State*, 638 S.W.2d 883,

886 (Tex.Crim.App. [Panel Op.] 1982), *overruled on other grounds, Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). The characteristics must be so unusual and distinctive as to be like a signature. *Bishop*, 869 S.W.2d at 346; *Messenger*, 638 S.W.2d at 886.

Here, identity is clearly at issue because the complainant never saw the man who raped her. She therefore was unable to provide a positive identification of who committed the offense. In this regard, the State offered evidence of an extraneous offense to prove Avila committed the offense. The State argued during a hearing on Avila's motion in limine to exclude the evidence that the extraneous rape was extremely similar to the offense charged and was therefore relevant to prove identity. Specifically, the State explained that both rapes "occur[red] in the dark, at night. In both instances, the victim was asleep; both occurred here in the city limits of Crystal City; both instances the perpetrator entered the room without the consent of the victim. In both instances the perpetrator turned the victims over. In both instances the sexual act was essentially in the same type of position." The trial court admitted the testimony of P.M., the victim of the extraneous rape, based on the State's representations of the high degree of similarity between the two rapes.

During the State's case-in-chief, P.M. testified that in the early morning hours of May 23, 1997, she was raped. She explained that as she was sleeping, she felt a man, whom she believed to be her husband, begin to kiss her. The man then turned her over, and the two had sexual intercourse. P.M. stayed in bed until after the man left and after a few minutes, thought it was strange that her husband had not said goodbye. P.M. got out of bed and went to the front door, which was slightly ajar. She looked through the door and realized that her husband's truck wasn't there. She then paged her husband, thinking he was nearby. When he

called back, however, P.M. discovered her husband was in another town.

Numerous cases have involved claims that an extraneous offense and the charged offense were not substantially similar enough to warrant the admission into evidence of an extraneous offense. For example, in *Walker v. State*, the court found the two offenses at issue to be sufficiently similar. 588 S.W.2d 920, 924 (Tex. Crim.App.1979). The offenses both occurred at night, in the same area, within a period of one month. The perpetrator was alone, carried a small gun, and tied up the victims in a similar manner. Additionally, in both cases a robbery preceded the rape, and all coins but pennies were stolen from the victims. *Id.; Lane v. State*, 933 S.W.2d 504, 519 (Tex.Crim.App.1996). Likewise, in *Clarke v. State*, the Fort Worth court of appeals found that evidence of an extraneous sexual assault was sufficiently similar to the offense charged where in both offenses the victims were attacked at home during the night. 785 S.W.2d 860, 867 (Tex.App.-Ft. Worth 1990), *aff'd*, 811 S.W.2d 99 (Tex.Crim.App. 1991). The assailant used duct tape to blindfold both victims and bind their hands and feet. *Id.* The perpetrator's face was covered during both attacks, and he forced each victim to engage in sexual intercourse several times. *Id.* He further either washed the victim's vagina after the attack or made the victim wash her vagina before he left. *Id.* The assailant also used a knife in the attack and asked each victim whether she had a gun in the house. *Id.*

By contrast, in *Ford v. State*, the Court of Criminal Appeals found that the two offenses at issue were not sufficiently similar to warrant admission into evidence of the extraneous offense. 484 S.W.2d 727, 730 (Tex.Crim.App.1972). The perpetrator of each robbery was a tall black man who wore a purple shirt and used a small pistol. *Id.* The robberies however, were separated by almost two months in time, and the first robbery was committed by four men, whereas the second was committed by only one who entered on the pretext of seeking work. *Id.*

In reaching its conclusion, the court recognized that:

> "there will always be similarities in the commission of the same type of crime. That is, any case of robbery by firearms is quite likely to have been committed in much the same way as any other. *What must be shown to make the evidence of the extraneous crime admissible is something that sets it apart from its class or type of crime in general, and marks it distinctively in the same manner as the principal crime.*"

*Id.* (emphasis added).

Unlike in *Walker* and in *Clarke*, where the assailant either took all coins except pennies from his victim, or forced the victims to wash themselves after the offense, there is nothing in this case that would act as the "signature" of the perpetrator and affirmatively link the charged offense to the extraneous offense. Although the two offenses share some similarities, we find those similarities are not substantial enough to warrant the admissibility of the extraneous conduct testimony. Both rapes occurred within the city limits of Crystal City during the early morning hours while both victims were sleeping. In each case, the assailant entered the premises without the consent of the victim and raped each victim in a common sexual position. None of these similarities would mark both offenses as the "handiwork of the accused." Instead, the similarities are "more in the nature of the similarities common to the type of crime itself, [rape], rather than similarities peculiar to both offenses" involved here. *Ford*, 484 S.W.2d at 730. We find the trial court erred in admitting the evidence.

*Harm Analysis*

Upon reaching the conclusion that the trial court erroneously admitted the extraneous offense evidence, we must determine whether such error was harmless. The erroneous admission of an extraneous offense does not constitute constitutional error. *See Phelps v. State*, 999

S.W.2d 512, 520 (Tex.App.-Eastland 1999, pet. filed); *Garza v. State,* 963 S.W.2d 926, 929 (Tex.App.-San Antonio 1998, no pet.). Therefore, we apply Texas Rule of Appellate Procedure 44.2(b). Rule 44.2(b) provides that any error, other than constitutional error, "that does not affect substantial rights must be disregarded." In other words, we disregard the erroneous admission of evidence if it did not adversely affect the jury's verdict, or had only a slight effect on the jury's verdict. *See King v.* State, 953 S.W.2d 266, 271 (Tex. Crim.App.1997); *Garza,* 963 S.W.2d at 929.

Clearly, the introduction of P.M.'s rape to prove Avila committed the charged offense would adversely affect the jury's verdict. Given the lack of unique similarities between the two offenses, we do not find that the extraneous offense was relevant to the issue of identity. *See* Tex.R. Evid. 404(b); *Bishop,* 869 S.W.2d at 346; *Collazo v. State,* 623 S.W.2d 647, 647 (Tex.Crim. App. [Panel Op.] 1981). Because the offense was irrelevant to identity, it carried little probative value and would tend to impress upon the jury the notion that Avila acted in conformity with his character, an impression the law seeks to avoid. *See* Tex.R. Evid. 402; *Cobb v. State,* 503 S.W.2d 249, 250 (Tex.Crim.App.1973). We find the introduction of the extraneous offense was harmful and sustain Avila's fourth, fifth and sixth issues.

Legal and Factual Sufficiency

■ In addition, Avila complains that the evidence is both legally and factually insufficient to sustain his conviction. Specifically he argues there is no evidence that proves he is the person who committed the offense. A challenge to the sufficiency of the evidence must be addressed before disposing of a case even though a reversal of the case might be based on other grounds. *Hooker v. State,* 621 S.W.2d 597, 598 (Tex.Crim.App.1980); *Rodriguez v. State,* 697 S.W.2d 463, 465 (Tex.App.-San Antonio 1985, no writ). Therefore, we will address Avila's suffi-ciency claims, despite the fact we have already sustained a separate issue.

## Standard of Review

In analyzing the legal sufficiency of the evidence, we review only the evidence that supports the verdict to determine whether a rational trier of fact could have found beyond a reasonable doubt all the elements of the offense charged. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Barnes v. State,* 876 S.W.2d 316, 322 (Tex.Crim.App.1994); *Leal v. State,* 975 S.W.2d 636, 638–39 (Tex. App.-San Antonio 1998, pet. ref'd). In conducting such an examination, we consider admissible and inadmissible evidence. *See Gardner v. State,* 699 S.W.2d 831, 835 (Tex.Crim.App.1985). Under the legal sufficiency standard, the jury is the exclusive judge of the credibility of a witness, and the weight to be given his or her testimony. *See McFarland v. State,* 928 S.W.2d 482, 496 (Tex.Crim.App.1996); *Arriaga v. State,* 2 S.W.3d 508, 510 (Tex.App.-San Antonio 1999, pet. ref'd). Accordingly, the jury may choose to either believe some, all or none of the testimony or any other evidence presented. *See id.*

In reviewing a challenge to the factual sufficiency of the evidence, we consider all of the evidence without substituting our judgment for that of the trier of fact. *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996); *De Los Santos v. State,* 918 S.W.2d 565, 569 (Tex.App.-San Antonio 1996, no pet.). We may set aside the judgment only where "the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust ..." *Clewis,* 922 S.W.2d at 135; *see Arriaga,* 2 S.W.3d at 510.

## Discussion

■ Avila asserts that the evidence is both legally and factually insufficient to support his conviction. Specifically, he contends that evidence of his "mere presence" is not enough to prove identity. Avila suggests that because the State's DNA

evidence was never affirmatively linked to him, and because the extraneous conduct evidence is not sufficiently similar to the present offense to be admissible, his conviction cannot be sustained.

In conducting a sufficiency of the evidence review, we examine all of the evidence, both admissible and inadmissible, that supports the verdict. *See Gardner*, 699 S.W.2d at 835. Therefore, whether the DNA and extraneous conduct evidence was properly admitted is inconsequential to this discussion. The State elicited testimony from both the victim, as well as Jose Padron, the motel attendant, which placed Avila in the motel parking lot before the rape occurred. Furthermore, the DNA evidence suggests that the genetic markers attributed to Avila occur in one in every ninety-six Hispanics in the United States.

The State additionally introduced evidence of another rape as extraneous conduct evidence of Avila's guilt. The DNA evidence drawn from the second rape investigation contains the same genetic markers as the first, and in neither case can Avila be excluded from being a potential contributor of that genetic material. This evidence, viewed in a light most favorable to the jury verdict, allows us to conclude that a jury could have found beyond a reasonable doubt that Avila committed the charged offense.

Avila also challenges the factual sufficiency of the evidence against him. However, because our disposition of a prior issue requires this case to be remanded to the trial court, we need not address his contention. *See Howley v. State*, 943 S.W.2d 152, 155 (Tex.App.-Houston [1st Dist.] 1997, no writ).

CONCLUSION

Because we find the trial judge erroneously admitted harmful extraneous offense evidence, we reverse Avila's conviction and

remand the cause to the trial court for further proceedings.