In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00098-CR


______________________________




CHESTER ENNIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 99F0427-202




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross


Concurring Opinion by Chief Justice Cornelius



O P I N I O N



 Chester Ennis appeals his conviction by a jury for possession of a deadly weapon
in a penal institution. The jury assessed Ennis' punishment at ninety-nine years'
imprisonment. On appeal, Ennis contends the trial court erred in admitting into evidence
two weapons and testimony about them. He also contends there is legally insufficient
evidence to convict him and he was not afforded due process of law.

 Carl Brewer, a correctional officer with the Texas Department of Criminal Justice
(TDCJ), testified he was escorting inmates to the showers on the day the events at issue
occurred. He approached Ennis' cell, strip-searched him, allowed him to re-dress, and told
him to put his hands out the food tray slot of his cell door so he could be handcuffed. 
Brewer testified Ennis reached his hands through the food tray slot and "started jigging at
me with two unknown weapons." Ricky Judd, another correctional officer who was
standing near Brewer, testified Ennis stabbed at Brewer through the food tray slot with two
homemade weapons. However, Jimmy Underwood, who occupied the cell next to Ennis
and who testified for the defense, stated he viewed everything through an opening in his
cell door and never saw a weapon in Ennis' hands. 

 Brewer testified he jumped back from Ennis' cell and swung his riot baton, hitting
the food tray slot. William Jones, a correctional officer who was positioned in the picket
area (the secure area controlling the opening and closing of cell doors) a short distance
from Ennis' cell, testified he saw Ennis moving his hands through the food tray slot and
saw Brewer jump away from the cell door. Ennis backed into his cell, and Brewer closed
the food tray slot. Brewer testified he saw Ennis place the weapons in his commode and
flush repeatedly; Judd testified he saw Ennis flush the commode. 

 Brewer later identified two sharpened mirrors as resembling the weapons Ennis had. 
Judd identified the two sharpened mirrors as "the same kind of material" he saw in Ennis'
hands. There was testimony from several officers these sharpened mirrors were capable
of causing death or serious bodily injury.

 Brewer testified he witnessed prison maintenance personnel, not an inmate
plumber, remove the two weapons from the pipe chase, which was located outside Ennis'
cell. Jones testified he saw the weapons retrieved from the commode inside Ennis' cell. 
John Compton, the assistant maintenance supervisor at the prison, testified he supervised
as an inmate plumber removed the weapons from the pipe chase. Jeffrey Cato, a
lieutenant at the prison, testified he witnessed Davey Rochelle, an inmate plumber, remove
the weapons from the pipe chase and hand him the weapons, which he received in a towel. 
Rochelle, who testified for the defense, stated he did not find anything lodged on the catch
pin of the pipe chase, but when he removed the catch pin, an officer got a flashlight, looked
in the pipe, and removed the weapons. 

 Compton testified it would have been impossible for material from another cell to get
into the plumbing from Ennis' cell. Rochelle testified the objects could have come from any
of the nearby cells, based on where he testified the officers found them. 

 Ennis first contends the trial court erred in admitting the weapons into evidence
because the State failed to establish a proper chain of custody. As a predicate to
admissibility, Texas Rule of Evidence 901(a) requires a party who offers an item into
evidence to establish, to the trial court's satisfaction, the item is what the party represents
it to be. Tex. R. Evid. 901(a); Avila v. State, 18 S.W.3d 736, 739 (Tex. App.-San Antonio
2000, no pet.). A chain of custody must be established when (1) there is a possibility of
commingling the item with items similar in appearance, (2) the sponsoring witness has not
marked with distinctive markings an item not having distinctive characteristics, or (3) there
is a suggestion the evidence has been tampered with or changed in some manner. Ballard
v. State, 23 S.W.3d 178, 183 (Tex. App.-Waco 2000, no pet.).

 The chain of custody is conclusively established if an officer testifies he or she
seized the item of physical evidence, tagged it, placed an identifying mark on it, placed it
in evidence storage, and retrieved the item for trial. Lagrone v. State, 942 S.W.2d 602,
617 (Tex. Crim. App. 1997); Avila, 18 S.W.3d at 739. However, proof of chain of custody
goes to the weight rather than the admissibility of the evidence. Kingsbury v. State, 14
S.W.3d 405, 407 (Tex. App.-Waco 2000, no pet.). Absent evidence of tampering or
commingling, theoretical breaches in the chain of custody do not affect the admissibility of
evidence. Id.

 Ennis points to the following purported deficiencies in the State's evidence regarding
the weapons: (1) Brewer's testimony he did not know what the weapons were at the time
of the assault; (2) conflicting evidence regarding whether Brewer was present when the
weapons were removed from the pipe chase; (3) Cato's inconsistent testimony on direct
examination and cross-examination regarding the envelope in which he sealed the
weapons; and (4) Cato's purported failure to account for the discrepancy in time between
the seizure of the weapons and the sealing of the weapons in the envelope.

 The trial court's ruling on the admission of evidence will not be overturned absent
a clear abuse of discretion. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App.
1996). The sufficiency of the predicate is also within the sound discretion of the trial court. 
Davis v. State, 992 S.W.2d 8, 11 (Tex. App.-Houston [1st Dist.] 1996, no pet.). A
reviewing court should not reverse a trial court's ruling on the admissibility of evidence that
is within the "zone of reasonable disagreement." Green, 934 S.W.2d at 102.

 Reviewing the evidence, we detect no abuse of discretion. It is true Brewer could
not identify the weapons introduced at trial as the actual weapons he saw in Ennis' hands. 
In fact, he testified he did not know what the weapons were at the time of the assault. 
However, he later testified the weapons introduced at trial "resemble[d] what . . . Ennis had
in his hands that day." Further, he testified he saw Ennis place the weapons in the
commode in his cell. In addition, Judd testified he saw Ennis stab at Brewer with two
homemade weapons and identified the two sharpened mirrors as "the same kind of
material" he saw in Ennis' hands. 

 Cato, Brewer, and Compton each testified the weapons were removed from the pipe
chase outside Ennis' cell. Though Ennis contends Cato testified Brewer was not present
when the weapons were recovered, at best his testimony was he could not remember
whether Brewer was there. Though Jones, the officer stationed in the picket area, testified
he saw the weapons removed from the commode in Ennis' cell, the trial court was entitled
to give greater weight to the testimony of other witnesses for the purpose of determining
admissibility.

 Cato and Compton testified it was Rochelle, the inmate plumber, who removed the
weapons from the pipe chase. Brewer testified it was a maintenance person, not an
inmate plumber. Rochelle testified it was a correctional officer. These inconsistencies do
not undermine the central inference that the weapons were removed from the pipe chase
and turned over to Cato.

 Cato testified he sealed the weapons in an envelope and sent them to Todd
Warren, an investigator with the internal affairs office at the prison. Though Ennis
contends Cato failed to account for the discrepancy in time between when he seized the
weapons and when he sealed them in the envelope, a review of the testimony shows
neither Ennis nor the State asked him how long it took him after he seized the weapons
to seal them in the envelope. In any event, Warren testified the weapons were still wet
when he received them, indicating both that Cato sent the weapons to him soon after he
seized them and that the weapons were the same ones discovered in the pipe chase. 

 Though in his testimony on direct examination Cato identified an envelope as the
one in which he sealed the weapons, on cross-examination he corrected himself and
stated it was not the same envelope. However, Warren testified that, after receiving the
weapons, he sealed them in an evidence envelope and marked the envelope with the
relevant details of the case. He identified the markings on the envelope as his own. 

 In sum, the purported deficiencies in the State's evidence regarding chain of custody
amount to nothing more than theoretical gaps that, as mentioned previously, do not affect
admissibility in the absence of evidence of tampering or commingling. Ennis contends,
however, there is affirmative evidence of commingling in this case.

 The basis for his contention is testimony elicited in a pretrial hearing. Ennis was
found to be in possession of weapons on at least two occasions. The first, which was the
subject of the indictment in the present case, occurred on May 14, 1999; the second
occurred three days later on May 17, 1999. Both offenses involved sharpened mirrors.

 Warren testified he opened a single case file covering both offenses. From this fact,
and from some apparent difficulty Ennis had in obtaining reports related solely to the
May 14 incident, Ennis speculates the weapons associated with each offense were
commingled. However, Warren's testimony refutes Ennis' theory.

 Warren testified that, after the May 14 incident, he collected the evidence and
placed it in the property room, but went home for the weekend before beginning the
paperwork. When he returned on May 17, he had a report on the May 17 incident. 
Because both offenses were similar, he chose to open a single case file. However, he
testified he maintained the weapons seized after each incident in separate envelopes,
each marked with the relevant details of the respective case. Therefore, Warren's
testimony provides a basis on which the trial court could have concluded the weapons from
the May 14 and May 17 incidents were not commingled. We overrule Ennis' first issue on
appeal.

 In his second issue on appeal, Ennis challenges the legal sufficiency of the
evidence. In reviewing the legal sufficiency of the evidence, we look to see whether, after
viewing all of the evidence in the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); Lane
v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). We evaluate all of the evidence
in the record, both direct and circumstantial, whether admissible or inadmissible. Johnson
v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

 To support a conviction for possession of a deadly weapon in a penal institution, the
State must show (1) that the accused exercised actual care, control, or custody of the
weapon, (2) that the accused was conscious of his or her connection with it, and (3) that
the accused possessed the weapon knowingly or intentionally. See Brown v. State, 911
S.W.2d 744, 747 (Tex. Crim. App. 1995); Nguyen v. State, 54 S.W.3d 49, 52-53 (Tex.
App.-Texarkana 2001, pet. ref'd). The evidence used to satisfy these elements can be
direct or circumstantial. See Brown, 911 S.W.2d at 747; Nguyen, 54 S.W.3d at 53. 
Whether direct or circumstantial evidence is used, the State must establish that the
accused's connection with the weapon was more than just fortuitous. See Brown, 911
S.W.2d at 747; Nguyen, 54 S.W.3d at 53.

 However, when the weapon is not found on the accused's person or is not in the
accused's exclusive possession, additional facts must affirmatively link the accused to the
weapon. See Nguyen, 54 S.W.3d at 53. The affirmative links ordinarily emerge from an
orchestration of several factors and the logical force they have in combination. Id. Factors
that may establish affirmative links include: (1) whether the accused was present when the
weapon was found; (2) the proximity of the accused to the weapon; (3) whether the
weapon was in a place the accused controlled, had a right to possess, or to which he or
she had access; (4) whether the weapon was in plain view; (5) whether the weapon was
found in an enclosed space; (6) whether the accused's conduct indicated a consciousness
of guilt; and (7) whether affirmative statements connect the accused to the weapon. See
id.

 We conclude there is sufficient evidence linking Ennis to the weapons. Brewer and
Judd testified the weapons produced at trial resembled the weapons they saw in Ennis'
hands. Both officers testified they saw Ennis flushing his commode immediately after
pulling his hands back into his cell. Cato and Compton testified they watched Rochelle
remove the weapons from the pipe chase outside Ennis' cell. Compton testified it would
have been impossible for material from another cell to get into the plumbing from Ennis'
cell.

 Ennis contends the evidence is insufficient to show he had a weapon at all. He
observes Brewer testified he did not know what the weapons were at the time of the
assault. Underwood testified Ennis did not have a knife. Ennis also contends it is not
reasonable to conclude he could have so quickly pulled his hands back through the small
opening of the food tray slot when Brewer swung at him with his riot baton.

 Though Brewer could not identify the weapons introduced at trial as the weapons
he saw in Ennis' hands, he testified they resembled what he saw. He also testified he saw
Ennis place the weapons in his commode. In addition, Judd testified the weapons
admitted into evidence were "the same kind of material" he saw in Ennis' hands. Though
Ennis contends it would have been impossible for him to quickly pull his hands back
through the food tray slot, Brewer and Judd never testified he did. Rather, they testified
Brewer swung at and hit the food tray slot. In fact, when asked why Brewer did not hit
Ennis, Judd responded, "Evidently, he didn't aim for him." 

 Ennis also contends it is not reasonable to conclude that objects the size of the
weapons introduced into evidence could be flushed down the commode and survive intact. 
He also points to conflicting evidence regarding whether the weapons could have
originated from one of the surrounding cells.

 However, the jury saw the weapons and drew the inference the weapons could be
flushed down the commode. That inference is supported by the fact the weapons were
found in the plumbing. Even if, as Ennis contends and Rochelle testified, the weapons
could have come from a surrounding cell, it is clear they must have been flushed down a
commode in one of the cells. However, Compton contradicted Rochelle's testimony when
he testified it would have been impossible for material from a surrounding cell to get into
the plumbing from Ennis' cell. The jury was entitled to give greater weight to Compton's
testimony. We overrule Ennis' second issue on appeal.

 In his third issue on appeal, Ennis contends we should reverse the trial court's
judgment because his due process rights were violated. The basis for his contention is the
State's failure to comply with the TDCJ's administrative directives regarding evidence
handling and crime scene protection. He contends that, in violation of the TDCJ's policy,
(1) Cato removed the weapons from the scene without first notifying internal affairs and
without taking photographs or making a videotape of the weapons' removal; (2) Cato did
not mark or tag the weapons after seizing them; (3) the correctional officers involved did
not immediately create written reports, but waited almost two months after the incident; and
(4) Warren did not preserve the crime scene surrounding Ennis' cell and conduct an
adequate follow-up investigation.

 Ennis has failed to direct this Court to any place in the record where he raised his
due process objection. Before trial, he raised a motion to suppress based on "the
co-mingling [sic] of evidence and facts in the preparation of the investigation of this case." 
He went on to explain his concern that it would be impossible to keep information about
the May 17 incident from the jury. The trial court overruled the motion as untimely, but
stated that if the motion had been timely, it would have been overruled. At trial, Ennis
objected to the admission of the weapons based only on the State's failure to maintain a
proper chain of custody and not on a violation of his due process rights. Even
constitutional errors may be waived by the failure to object at trial. Briggs v. State, 789
S.W.2d 918, 924 (Tex. Crim. App. 1990).

 Further, Ennis' contention is improperly briefed. See Tex. R. App. P. 38.1(h). He
has failed to direct this Court to any authority demonstrating how he has a due process
interest in the TDCJ's compliance with its administrative regulations. He has also failed to
demonstrate how he was prejudiced by the TDCJ's failure to comply with these guidelines.

 Ennis also contends the State either failed to comply with his discovery requests or
fabricated evidence to enhance the prosecution. The basis for Ennis' contention is the
State's delay, in response to his requests, in revealing reports related to the May 14
incident. This contention is also improperly briefed because Ennis fails to cite this Court
to any authority showing the legal standard governing the issue. In any event, it is worth
noting that, several times in the record, the State indicated it gave Ennis a complete copy
of everything in its files. Further, the trial court held a pretrial hearing where it was revealed
the May 14 and May 17 incidents were combined under a single case number. Therefore,
any purported delay in providing Ennis with reports related to the May 14 incident was
shown to be, at best, inadvertent.

 The judgment is affirmed.


 Donald R. Ross

 Justice




CONCURRING OPINION



 It is not necessary to prove a chain of custody unless the contraband in question is
fungible so it can lose its identity if it is commingled with another fungible substance. In
this case, the contraband consisted of two sharp weapons. There is direct testimony that
the two weapons recovered and introduced in evidence were similar to the weapons the
witnesses saw in Ennis' hands. That is sufficient identification without further proof of chain
of custody.

 Moreover, as noted in the majority opinion, proof of affirmative links connecting an
accused to the contraband is necessary only when the contraband is not found in the
accused's actual, physical possession. Here there is direct evidence that Ennis had the
weapons in his hands, so proof of additional affirmative links was unnecessary.


 For these additional reasons, I concur in the judgment.


 William J. Cornelius

 Chief Justice


 

Date Submitted: October 18, 2001

Date Decided: February 15, 2002


Publish