Opinion issued July 25, 2002
















In The

Court of Appeals

For The

First District of Texas






 NO. 01-01-00247-CR 

___________


CHRISTOPHER MONTGOMERY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 176th District Court

Harris County, Texas

Trial Court Cause No. 851783






O P I N I O N

 A jury found appellant, Christopher Montgomery, guilty of the first degree
felony offense of aggravated assault with a deadly weapon and assessed his punishment
at thirty years in prison. In seven points of error, appellant contends he received
ineffective assistance of counsel, the trial court erred in admitting into evidence letters
he wrote to the complainant, and the trial court erred by unconstitutionally limiting his
right of confrontation when he was precluded from discovering a witness's address. 
No motion for new trial was filed. We affirm.

Factual Background

 Chundra Sistrunk, the complainant, testified she had been dating appellant for
about 18 months. She broke up with appellant several times during their relationship
and she described him as "not very happy about it." Their relationship ended one
month prior to the incident in question. Sistrunk stated that at approximately 5:00 p.m.
on August 2, 2000, appellant approached her, but she did not want to talk to him. She
agreed to give appellant a hug so he would leave. When she gave him a hug, appellant
grabbed her, pulled her behind some steps and put a knife to her throat. He told her not
to scream or else he would cut her. Sistrunk testified that she was scared and
threatened by appellant's actions. 

 Appellant told her they were going to "Michael's place." Michael Johnson is the
husband of Sistrunk's friend, Maraion Johnson. Both Maraion and Michael Johnson
were present when Sistrunk and appellant arrived. Before entering the Johnsons'
apartment, appellant told Sistrunk that he would cut her with the knife if she made
anyone suspicious. Sistrunk was feeling nervous and her nervousness caused her to
"hurt real, real bad." Once inside the apartment, Sistrunk fell asleep in the living room. 
When she awoke, she still felt sick and, hoping Michael would stay with her, she asked
him to help appellant take her home. At appellant's request, Michael went to get
Sistrunk's mother and left appellant and the complainant alone outside the Johnsons'
apartment. 

 Sistrunk testified that, after Michael left, appellant's demeanor changed to that
of a "crazy person." He started pulling her to the back of the apartment building. 
Fearing for her life, she began struggling with appellant, fighting him and hitting him
with her purse. During the struggle, she fell down. As Sistrunk was lying face down
on the ground, appellant got on top of her, hit her repeatedly, and stabbed her. 
Appellant then ran away, and Sistrunk ran toward the gate in front of the Johnsons'
apartment unit and collapsed in front of Maraion Johnson. Sistrunk was taken to the
hospital, where she stayed for approximately two weeks. 

 Maraion Johnson, who knew both appellant and Sistrunk, testified that appellant
spent the day at her apartment with Johnson and her husband. Appellant left between
6:30 p.m. and 7:00 p.m. and came back about 20 minutes later with Sistrunk. Maraion
saw that Sistrunk appeared ill and was vomiting. Michael Johnson had called for an
ambulance for Sistrunk and went across the street to get help while Maraion checked
on Sistrunk's children. Sistrunk and appellant were left alone outside, waiting for the
ambulance. 

 When Maraion looked outside, she saw Sistrunk running toward her screaming
for help and shouting that appellant had beaten and stabbed her. When Sistrunk
removed her hand from her back, Maraion saw that Sistrunk had a puncture wound and
was bleeding. Maraion saw appellant running from several men. She believed the men
were chasing him because he had stabbed Sistrunk. Maraion testified that she did not
see the beating take place, nor did she see a knife. 

 Deborah Johnson, a neighbor of appellant's and a friend of his mother, testified
that she was awakened in the middle of the night by the sounds of a woman "screaming
and hollering." Johnson went to the window and saw a man, approximately six feet
away, on top of a woman, beating her with his fists. Once Johnson recognized that the
man was appellant, she beat on the windows and shouted at appellant to stop. She saw
appellant run away, come back and snatch the woman's purse, and then run away again. 
She saw the woman, screaming with her hands in the air, run into a breezeway. 
Johnson stated she was "100 percent positive" that the man she saw beating the woman
was appellant. 

 Houston Police Officer Frederick Gilford testified that, while on patrol at
approximately 11:35 p.m on August 2, 2000, he responded to a dispatch call regarding
a "cutting in progress." When Officer Gilford arrived at the scene, he saw appellant
running towards him, with several people chasing him. Appellant approached Gilford
and other officers asking for help. He fell to the ground directly in front of them,
extended his arms and lay down on his stomach. Witnesses at the scene told Gilford
that appellant threatened Sistrunk several times and stabbed her when she would not
comply with his demands. Near the location where Sistrunk was assaulted, Gilford
found her purse and an open knife with a three inch blade with blood on it. Officer
Gilford later saw Sistrunk's stab wound when he interviewed her at the hospital. 

 Georgia Hall, Sistrunk's older sister, testified that she received a telephone call
from her mother informing her that Sistrunk had been stabbed. Hall went to the scene,
but the ambulance had already transported Sistrunk to the hospital. Hall saw appellant
in the back of a patrol car and heard him "hollering that he was sorry for what he did." 
The next day, Hall received a collect call from the Harris County jail. She recognized
appellant's voice from many previous conversations with him while he was dating
Sistrunk. Without stating his name, appellant said, "I killed the bitch, [the] bitch is
dead" and hung up.

 Appellant testified that he had dated Sistrunk for 18 months and repeatedly broke
up with her, after which she would try to re-establish the relationship. Appellant stated
that, on August 2, 2000, he took a bus from downtown to Maraion Johnson's
apartment, arriving about 6:45 p.m. He left the apartment and returned later with
Michael. Appellant denied that he went to the Johnson's apartment with Sistrunk and 
denied forcing Sistrunk to the apartment with a knife. Rather, appellant claimed he was
with Michael when he saw Sistrunk for the first time that day, around 8:00 p.m. at a
Stop 'n Go. He testified that he did not see Sistrunk again until 9:30 p.m. when she
arrived at the Johnson's apartment. He stated Sistrunk was still in the apartment when
he later left alone. 

 He contends Sistrunk approached him while he was smoking a cigarette outside
his mother's apartment. Appellant stated Sistrunk was crying because she heard he was
dating someone else. Appellant denied owning the knife found at the scene, and he
testified that Sistrunk pulled the knife on him and cut his left arm. 

 According to appellant, at some point Sistrunk, her brother, her brother-in-law,
and appellant were in an alleyway beside the Johnsons' apartment. Appellant claimed
someone hit him from behind, causing him to drop to the ground. He then saw Sistrunk
had a knife in her hand, and he "had no other choice" but to try and overpower her
while the two men were beating and kicking him. Appellant testified he took the knife
during the struggle and "just started jabbing." He did not remember stabbing the
complainant.

 Appellant ran away, followed by the two men. Appellant denied returning to the
scene and taking Sistrunk's purse. He stated that, after he ran from scene, the two men
caught up with him and started beating him again. When he heard the police sirens, he
ran back to the apartment complex and fell on the ground in front of the officers
because he was dazed and in pain. 

 Appellant denied making any collect calls to Hall. He further denied having a
conversation with Hall while he was in the patrol car or sending any letters to Sistrunk. 
Appellant admitted to prior misdemeanor convictions for theft by check, and evading
arrest and a felony conviction for burglary of a habitation. 

Ineffective Assistance of Counsel

 In his first point of error, appellant asserts that his trial counsel was ineffective
when he failed to object to the prosecutor's use of appellant's prior oral statements,
allegedly made during plea negotiations, in order to impeach appellant in front the jury. 
Specifically, appellant asserts trial counsel failed to object when the prosecutor cross-examined appellant as follows: 

 Q. Mr. Montgomery, you sent some letters from the jail to [the
complainant]?


 A. That's your allegations. I didn't send any kind of letters, sir.


 Q. Oh, you didn't send any letters?


 A. No, sir.


 Q. Mr. Montgomery, you and I have had a prior occasion to talk
before, right?


 A. Well, back in -- 


 Q. With Mr. Nicholas present?


 A. Back in August.


 Q. And on that day didn't you tell me you committed this crime?


 A. No, sir, I did not.


 Q. So you didn't tell me on September 28th that I did what I did, I'm
only 21 years old, I don't deserve to be punished like this, I accept
responsibility for the whole thing, I'm sorry for sending the letters?


 A. No, sir I didn't tell you that.


 Q. But you do remember Mr. Nicholas and I speaking to you or I
speaking to you in Mr. Nicholas' presence?


 A. Well, because you came back there for a plea bargain.


 Q. So would you say that I'd be lying?


 A. I'm not going to pass judgment on you, sir, but I'm not going to
take responsibility for something I didn't do, sir. I'm not going to
say he's lying.


 Q. So you are?


 A. I'm saying it's not true.

(Emphasis added). Appellant argues that his trial counsel's failure to object cannot be
called trial strategy as "[n]o conceivable rational trial strategy of any kind could justify
such a decision to allow his own client to be improperly impeached with inadmissible
evidence." 

 Appellant's argument is groundless because he was not impeached. The record
clearly shows that appellant denied he admitted to committing the offense and sending
letters to Sistrunk. Appellant's denials went unchallenged by the State, and the record
shows no admission of any oral statements used to impeach appellant's denials. Thus,
appellant's counsel was not ineffective for failing to object to improper impeachment
evidence when, in fact, he was not impeached. 

 We overrule appellant's first point of error.

Admission of Evidence

 In his second and third points of error, appellant contends the trial court erred in
admitting into evidence letters he allegedly wrote, while in jail, to Sistrunk. Appellant
asserts the State failed to meet its burden of showing he wrote the letters. Appellant
further asserts the probative value of the letters was substantially outweighed by their
prejudicial effect. 

 Although the trial court ruled all of the writings admissible, the State offered
only one letter into evidence. This letter, State's exhibit 15A, was a copy of the
indictment purportedly sent by appellant to the complainant. A handwritten note
appeared on the copy reading, "Oh, Don't sign anything if the people come to your
house. This is real and I'm scared for my life. This paper means they can hide me
forever. You [sic] the only who can help me by not talking to them about anything
please." Sistrunk interpreted this to mean appellant did not want to be punished for his
actions.

 We review whether the trial court erred in admitting evidence under an abuse of
discretion standard. Mozon v. State, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999). 
Unless the decision fell outside the zone of reasonable disagreement, given the law and
pertinent circumstances, we must uphold the decision. Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991). 

 Appellant bases his argument on article 38.27 of the Texas Code of Criminal
Procedure, which provides as follows: 

 It is competent to give evidence of handwriting by comparison, made by
experts or by the jury. Proof by comparison only shall not be sufficient
to establish the handwriting of a witness who denies his signature under
oath.


Tex. Code Crim. Proc. Ann. art. 38.27 (Vernon 1979).

 Here, the State did not offer an expert handwriting comparison. Nor did it ask
the jury to make such a comparison. The State simply presented evidence that Sistrunk
was familiar, from their prior relationship, with appellant's handwriting. The State then
elicited Sistrunk's non-expert opinion that the handwritten note on State's exhibit 15A
was written by appellant.

 Contrary to appellant's assertion, the requirement of authentication and
identification as a condition precedent to admissibility of a document is satisfied by a
non-expert opinion as to the genuineness of handwriting, based upon familiarity not
acquired for purposes of the litigation. Tex. R. Evid. 901(b)(2); Avila v. State, 18
S.W.3d 736, 739 (Tex. App.--San Antonio 2000, no pet.). Here, Sistrunk testified she
recognized the handwriting on the copy of the indictment as appellant's. Sistrunk
testified she was familiar with appellant's handwriting based on their relationship of
over 18 months. Sistrunk's testimony was sufficient to meet the authentication
requirement of Rule 901. Zimmerman v. State, 860 S.W.2d 89, 105 n.10 (Tex. Crim.
App. 1993). Thus, the trial court did not abuse its discretion in admitting the evidence.

 Appellant further contends that the probative value of the letter was strongly
outweighed by its prejudicial effect. However, appellant failed to make this objection
at trial; thus, it was waived. Appellant objected at trial on the grounds that the State
failed to prove the letter came from him. When the complaint on appeal differs from
that made at trial, any error is waived. Bell v. State, 938 S.W.2d 35, 54-55 (Tex. Crim.
App. 1996). Tex. R. App. P. 33.1(a).

 We overrule appellant's second and third points of error.

Right of Confrontation

 In his fourth through seventh points of error, appellant contends the trial court
erred in limiting his cross-examination of a witness in violation of the Sixth
Amendment (1) and article one, section ten of the Texas Constitution. (2) Specifically,
appellant claims the trial court erred in refusing to require the witness, Georgia Hall, 
to give her address.

 When defense counsel asked Hall where she lived, the State objected that her
home address was irrelevant. The trial court sustained the objection. Defense counsel
then asked, and Hall confirmed, that she lived near the location where her sister was
attacked. 

 A defendant is entitled to pursue all avenues of cross-examination reasonably
calculated to expose a motive, bias or interest for the witness to testify. Carroll v.
State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). However, the extent of cross-examination may be limited when a subject is exhausted, when the cross-examination
is designed to annoy, harass, or humiliate, or when the cross-examination might
endanger the personal safety of the witness. Id. In the present case, Hall testified she
received a threatening phone call from appellant the day after her sister was stabbed. 
Appellant reportedly told Hall, "I killed the bitch, [the] bitch is dead." 

 When disclosure would threaten the safety of a witness or a witness's family, the
defendant must show a pressing and particularized need to obtain the witness's address. 
Cook v. State, 738 S.W.2d 339, 341-42 (Tex. App.--Houston[1st Dist.] 1987, pet.
ref'd). Here, appellant was allowed to elicit from Hall that she lived near the location
where Sistrunk was stabbed. Appellant did not show a particularized need to obtain
Hall's exact address. Appellant continued his cross-examination of Hall regarding the
phone call and whether she had witnessed her sister being stabbed. Appellant was not
denied a thorough and effective cross-examination. See id. Thus, the trial court
properly denied appellant's request for Hall's exact address. 

 We overrule appellant's fourth, fifth, sixth, and seventh points of error.

Conclusion

 We affirm the judgment of the trial court. 




 Terry Jennings

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings.

Do not publish. Tex. R. App. P. 47.4.
1. U.S. Const. amend. VI.
2. Tex. Const. art. I, §10.