

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00069-CR

---

SIMON MICHAEL BULLOCK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 175th District Court
Bexar County, Texas[1]
Trial Court No. 2023CR8246, Honorable Catherine Torres-Stahl, Presiding

---

January 31, 2025

## MEMORANDUM OPINION

### Before PARKER and DOSS and YARBROUGH, JJ.

A jury convicted Simon Michael Bullock, Appellant, of continuous sexual abuse of a child under the age of fourteen.[2]  In two issues, Appellant contends the trial court erred by admitting DNA evidence and improperly charging the jury.  We affirm.

---

[1] Originally appealed to the Fourth Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001.

[2] *See* TEX. PENAL CODE ANN. § 21.02(b); *see also id.* § 22.021 (aggravated sexual assault as underlying offense in conviction for continuous sexual abuse of child); § 21.11(a) (indecency with child as underlying offense in conviction for continuous sexual abuse of child).

BACKGROUND

Following an outcry made by the complainant, E.B.,[3] to his mother, Appellant was indicted for continuous sexual abuse of a child by committing certain prohibited acts over a period of more than thirty days.  The jury heard testimony from, among others, E.B., E.B.'s mother, the sexual assault nurse examiner (SANE) who examined E.B. after his outcry, and the forensic scientist who tested DNA evidence.  The jury found Appellant guilty and assessed punishment at confinement for a term of fifty-three years and a fine of $10,000.

## ANALYSIS

## Admission of DNA Testing Results

In his first issue, Appellant asserts that the trial court abused its discretion in admitting evidence of DNA testing results because the State failed to establish the chain of custody for the evidentiary items that were tested.  The State argues Appellant did not preserve the issue for appeal because he failed to object each time the evidence was offered or, alternatively, his objection at trial does not comport with his complaint on appeal.  We assume, without deciding, that Appellant preserved this issue for appeal.

We review a trial court's ruling on the admissibility of evidence using an abuse of discretion standard.  *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  If the

---

[3] To protect the identity of the complainant, we identify him by his initials.  *See* TEX. R. APP. P. 9.10(a)(3).

2

ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. *Id.*

*Beginning of Chain of Custody: Evidence Collected from Appellant*

Bexar County Sheriff's Office deputy Marc Patino testified that an investigator gave him a warrant to take Appellant to be examined by a sexual assault nurse examiner (SANE). Patino was present for the SANE's examination of Appellant at the Methodist Specialty and Transplant Hospital. He explained that the SANE placed the evidence she collected in individual bags, which she then sealed and signed or initialed. Patino testified that after the examination, the SANE gave the bagged evidence to the officer. He explained that once those items are received, they are placed in the evidence room, which involves going inside the evidence room and writing in a binder the case number, offense, description of the evidence, and the locker number used. Patino stated that once evidence is placed in the evidence locker, it stays there until needed.

SANE Shannon Murphy testified that she performed a physical examination of Appellant and collected swabs and evidence during her examination. She listed what she collected in her report and she sealed and labeled the items collected, which were packaged separately. Murphy's report, which was admitted into evidence as State's Exhibit 17, lists a case number of "2022-BCSO-012571." It reflects that she collected bilateral hand swabs, fingernail swabs, pubic hair combings, buccal swabs, penile swabs, underwear, and peri-oral swabs during her examination.[4] She testified that page four of

---

[4] Appellant signed a consent form authorizing the physical examination and the collection of evidence. The form, which is included in Murphy's report, states, "The said samples taken from my body will be released to the investigating law enforcement agency: BCSO, in furtherance of their investigation."

the report, entitled Sexual Assault Evidence Release Form, was what "I get the officer that's leaving with the kit to sign. So I release to the officer one kit and one bag of clothing and have him sign." The report states, "Evidence kit sealed and labeled by: S. Murphy, RN CA-SANE." The report includes a "Sexual Assault Evidence/Film Release Form" stating that evidence described as "1 x kit, 1 x bag of clothing" in agency/case number BCSO#2022-BCSO-012571 was released by S. Murphy to "Patino #4592."

*Beginning of Chain of Custody: Evidence Collected from E.B.*

Melissa Gonzalez, a SANE at the Children's Hospital of San Antonio, testified that she examined E.B. Her report of the examination was admitted into evidence as State's Exhibit 16. The report reflects that the affiliated law enforcement agency is "BCSO" and the case number is "2022-012571." Gonzalez testified that she collected two known saliva swabs, two anal swabs, two penile/scrotal swabs, and E.B.'s underwear. She packaged each swab individually and packaged clothing separately from the swabs.

The State did not elicit testimony from Gonzalez regarding what she did with the evidence after she collected and packaged it. For example, she did not testify that she placed an identifying name, number, or label on the evidence to help identify it, nor did she testify as to the hospital's standard protocols for labeling and securing evidence. Gonzalez's report reflects that she placed the evidence in a sealed bag in the evidence storage room on June 23, 2022.

*End of Chain of Custody: Criminal Investigation Laboratory*

State's witness Jamie Pomykal, a forensic scientist for the Bexar County Criminal Investigation Laboratory, testified that she tested evidentiary items related to this case.

4

Pomykal prepared a forensic DNA report, which the State offered as State's Exhibit 18, reflecting the test results. Appellant objected to the introduction of the report, arguing, "There has been absolutely no testimony by anyone establishing that the swabs are the same swabs that came from [the hospital]." The trial court stated that "there needs to be more questioning as to how those link up in terms of case numbers, ID numbers, whatever . . . ."

Pomykal then testified that the crime lab linked a criminal investigation laboratory (CIL) number to the case number assigned by the law enforcement agency. Pomykal's report included both the agency case number assigned by the Bexar County Sheriff's Office (22012571) and the lab's CIL number, along with the complainant's name (E.B.) and the suspect's name (Appellant). The report stated that the evidence was received from Ruben R. Cruz from the Bexar County Sheriff's Office on June 28, 2022. Pomykal testified that the lab's evidence receiving section itemizes evidence when it is submitted to the lab. Counsel for the State began to question Pomykal about specific items of evidence referenced on her report. Appellant's counsel objected, stating, "Again, Your Honor, I'm going to object as to her reading from the report at this time about the items she's received before we have a ruling as to whether those items have been properly authenticated and chain of custody has been established." Counsel for the State responded that the SAPD[5] number, which was written on both SANE exam reports, matched the lab's CIL number. The trial court admitted State's Exhibit 18 into evidence.

---

[5] The record indicates that the referring agency was the BCSO, not the SAPD.

Pomykal then testified regarding the contents of the evidence she received for testing. When asked who labeled the tape-sealed sexual assault evidence collection kits as coming from E.B. and Appellant, Pomykal answered that the hospital staff labeled the kits. She testified that the items from E.B. consisted of penile/scrotal swabs, anal swabs, underwear, and a known standard. Pomykal went on to testify that human DNA consistent with two contributors was observed on the anal swabs and underwear taken from E.B. Pomykal concluded that the DNA analysis provided very strong support for the proposition that Appellant is a contributor of the DNA on those items.

*Rule 901*

Under Texas Rule of Evidence 901, the proponent of the results of scientific testing, such as the DNA test results at issue here, is required to establish a chain of custody in order to authenticate that evidence. TEX. R. EVID. 901; *Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.). The chain of custody is conclusively established if an officer testifies that he seized an item of physical evidence, tagged it, placed an identifying mark on it, placed the evidence in storage, and retrieved the item for trial. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997) (en banc). In the same way, when evidence is sent to a laboratory for analysis, to conclusively establish the chain of custody, the proponent must introduce testimony showing the laboratory handled the evidence in the same way. *See Medellin v. State*, 617 S.W.2d 229, 232 (Tex. Crim. App. [Panel Op.] 1981). A chain of custody is sufficiently authenticated when the State establishes "the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory." *Mitchell v. State*, 419 S.W.3d 655, 659–60 (Tex. App.—San Antonio 2013, pet. ref'd) (quoting *Martinez v. State*, 186

6

S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd)). However, Rule 901 does not require any particular standard of proof but instead requires only that the trial court be satisfied that the evidence is genuine. *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd).

We conclude that the State produced evidence to establish the beginning and the end of the chain of custody as to material collected from Appellant. *See Caddell v. State*, 123 S.W.3d 722, 727–28 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (State established that swabs taken from complainant were same items tested for DNA through evidence explaining process from collection and labeling to arrival at lab). However, the material collected from E.B. presents a closer question, owing to the lack of testimony regarding any identifying marks placed on the evidence by the nurse who collected it or any procedures followed to transfer the evidence from the hospital to the lab for testing. Bearing in mind that "Rule 901 only requires a showing that satisfies the trial judge that the item in question is what the State claims," *Avila*, 18 S.W.3d at 740, we conclude that the testimony elicited by the State was enough for the trial court to have found that the items Pomykal tested were what the State purported them to be, i.e., the items collected from E.B. by the SANE. *See Villarreal v. State*, No. 04-15-00290-CR, 2016 Tex. App. LEXIS 8891, at *6–7 (Tex. App.—San Antonio Aug. 17, 2016, no pet.) (mem. op., not designated for publication) (beginning and end of chain of custody sufficiently established by officer's testimony that he saw nurse perform blood draw, observed nurse seal vials, and filled out checklist regarding procedure, and toxicologist's testimony that she matched information on form to information on blood vial labels). Having found no abuse of discretion, we overrule Appellant's first issue.

Jury Charge Error

In his second issue, Appellant contends that the trial court erred when it overruled his objection to the jury charge regarding the third allegation of a predicate act that formed the basis for the continuous sexual abuse charge. We review a claim of alleged charge error by determining whether the charge was erroneous, and if it was, we conduct a harm analysis. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

To convict a person of continuous sexual abuse of a young child, the State must show that (1) during a period that is thirty or more days in duration, the defendant committed at least two acts of "sexual abuse," regardless of whether the acts of sexual abuse are committed against the same victim; and (2) for each act that occurred, the defendant was at least seventeen years old and the victim was a child less than fourteen years old. *See* TEX. PENAL CODE ANN. § 21.02(b). The statute does not require that the exact dates of abuse be proven. *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.). Moreover, the jury need not agree unanimously on which specific acts of sexual abuse occurred or the exact date of those acts. TEX. PENAL CODE ANN. § 21.02(d).

The application paragraph of the jury charge included three predicate acts of sexual abuse, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that in Bexar County, Texas, the defendant, [Appellant], did then and there, during a period that was thirty (30) or more days in duration, to-wit: from on or about the 15th Day of April, 2022, through the 22nd Day of June, 2022, when [Appellant] was seventeen (17) years of age or older, commit two or more acts of sexual abuse against a child younger than fourteen (14) years of age, namely:

On or about the 22nd day of June, 2022, [Appellant] did intentionally or knowingly cause the penetration of the anus of [E.B.], a child who was younger than 14 years, by [Appellant's] sexual organ;

On or about the 15th day of April, 2022, [Appellant] did intentionally or knowingly engage in sexual contact with [E.B.], a child, by touching part of the genitals of [E.B.] with the intent to arouse or gratify the sexual desire of any person;

On or about the 15th day of April, 2022, [Appellant] did intentionally or knowingly engage in sexual contact with [E.B.], a child, by causing [E.B.] to touch part of the genitals of [Appellant] with the intent to arouse or gratify the sexual desire of any person;

Then you will find the defendant guilty of the offense of continuous sexual abuse of a young child as charged in the indictment.

Appellant asserts that "there was no evidence that Appellant ever caused E.B. to touch his genitals" as set forth in the third allegation of a predicate act.

At trial, E.B. testified that Appellant used his hand to rub E.B.'s "front part," or penis, and his "back part," or buttocks, on at least three occasions and that Appellant's "front part" touched E.B.'s "back part." E.B. also testified that Appellant's penis went inside E.B.'s buttocks. Additionally, E.B.'s mother testified that E.B. told her that "[Appellant's] penis touched [E.B.'s] bottom, his butt, and he had touched his front part." E.B. told his mother it had happened on the day of his outcry, which was June 22, 2022, and also "that it had happened before." From her conversation with E.B., E.B.'s mother understood that the abuse began around November or December. The SANE who examined E.B. testified that E.B. reported to her that Appellant "put his front private" in E.B.'s backside. E.B. told the nurse that Appellant did these things "more than one time." E.B. decided to tell his mother about the abuse because Appellant "kept on doing it."

Thus, contrary to Appellant's claim, the record contains evidence that Appellant intentionally or knowingly caused E.B.'s body to touch Appellant's genitals. *See* Tex.

9

PENAL CODE ANN. § 21.11(c)(2) (definition of sexual contact includes "any touching of *any part of the body of a child* . . . with the anus, breast, or any part of the genitals of a person." (emphasis added)). Moreover, we reject Appellant's claim that the State has conflated the third predicate act, the allegation that Appellant caused E.B. to touch Appellant's genitals, with the first predicate act, the allegation that Appellant caused the penetration of E.B.'s anus. Based on the evidence presented, a jury could rationally conclude that Appellant caused E.B. to touch Appellant's genitals in an act of abuse that was separate from the act of anal penetration. Accordingly, we conclude that the inclusion of the challenged predicate act in the jury charge was not erroneous and overrule Appellant's second issue.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.


Judy C. Parker
Justice

Do not publish.