NO. 12-04-00047-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
DAVID SIMONEAUX,                                      §                APPEAL FROM THE 114TH
APPELLANT
 
V.                                                                         §                JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                         §                SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            David Simoneaux appeals his conviction for aggravated kidnapping. In two issues, Appellant
asserts that the trial court abused its discretion by admitting evidence of an extraneous offense and
that the trial court erred by failing to properly instruct the jury. We affirm.
 
Background
            Appellant was charged by indictment with the aggravated kidnapping of his wife, Carol
(“Carolyn”). The indictment charged as follows:
 
[T]hat on or about September 20, 2003, [Appellant] did then and there, with the intent to facilitate the
commission of a felony, to wit murder, or to facilitate the flight after the attempt or commission of said
felony and inflict bodily injury [on] Carol Simoneaux [did] intentionally or knowingly abduct Carol
Simoneaux . . . .


            At trial, Carolyn testified that on the night of September 20, Appellant woke her up and threw
her around the kitchen. Carolyn left the house, ran to her mother’s house next door, and called
police. A few moments later, Appellant kicked in the front door of her mother’s house. According
to Carolyn’s sister, Appellant “backhanded” their mother. Then, Carolyn testified, he walked out of
the house, drove his car into another car, and knocked down a post in the carport. Attempting to calm
him, Carolyn left her mother’s house, opened the passenger door of Appellant’s car, and leaned in. 
Appellant told her to get in the car, but she refused. Appellant grabbed her hair, pulled her in the car,
and drove off. According to another witness, Carolyn’s legs were still outside the car although
Carolyn stated that only her toes may have hit the road or the grass. When the car reached the end
of the driveway, Appellant stopped and Carolyn shut the door. Without saying a word, Appellant
began to drive down a county road at approximately seventy miles per hour. 
            At some point, Appellant’s car went off the road and came to an abrupt stop at the edge of
the woods. Appellant told her to get out of the car, and she complied after Appellant observed that
the car was on fire. Carolyn testified that she was scared and did not want to go into the woods with
Appellant. A few minutes later, the car exploded. After Carolyn observed emergency vehicle lights,
Appellant told her to “get down.” At some point, Carolyn observed flashlights, and Appellant again
began to tell her to “get down.” Carolyn testified that she did not scream or call for help. 
            The next thing Carolyn remembered was Appellant sitting on top of her with his hands around
her throat choking her. Carolyn did not recall Appellant saying anything to her, but thought
Appellant was going to kill her. Although she did not remember losing consciousness, the next thing
she remembered was a police officer kneeling beside her with Appellant in custody. On cross-examination, Carolyn testified that Appellant did not hit her, force her to leave her mother’s house,
or threaten her. She also stated that although she did not ask Appellant to stop and let her out,
Appellant did not make her stay in the car or force her into the woods. She further stated that she
would have gone with him into the woods rather than stay there by herself. Carolyn admitted that
she did not want to talk extensively to the district attorney’s office regarding this incident and
admitted trying to leave out facts. Carolyn testified that she did not believe she had been kidnapped
and still loved Appellant.
            Deputy Robert Hartman, a patrol deputy with the Smith County Sheriff’s Department,
testified that while following the K-9 unit searching for Carolyn, he heard a female yelling “help me.” 
Further searching led Hartman and other deputies across a barbed wire fence to a pasture where he
discovered Carolyn’s head cradled in Appellant’s arms. At the scene, Carolyn stated that Appellant
pulled her into the car and would not let her out. Further, Carolyn reported that when the deputies
were crossing the fence, Appellant told her that she was “fixing to die, so we’ll both die together” and
that his arms were around her neck. She also stated that Appellant told her he was going to snap her
neck and they would die together. Further, Carolyn declared that Appellant hit her in the face and
kicked her in the chest several times and that he took her from the residence forcefully. Carolyn
reported that Appellant had hit and kicked her repeatedly and choked her to the point of passing out.
She also said she lost consciousness momentarily.
            According to the emergency medical technician, Carolyn suffered swelling to her left eye,
bruising and circular abrasions around the throat, and multiple scrapes and abrasions on her legs and
arms. She had tenderness in her left flank or ribcage, stomach, and abdomen, as well as abrasions
on her stomach. The emergency room physician testified that Carolyn suffered a broken nose, bruises
to her hands, abrasions to her hands and behind both knees, bleeding from her left nostril, and
tenderness in her face, neck, abdomen, right hip, and mid and lower back.
            Additionally, Carolyn testified that on December 30, 2003, she was on the couch at her home
when Appellant walked in. Carolyn stated that Appellant did not assault her, but that his hand hit her
face more than once during a scuffle between them. However, according to Carolyn, he did not
threaten her. Carolyn “guessed” that she started the fight because Appellant attempted to take her
pill bottle away and was trying to protect her. According to Michael Lunsford, the Smith County
Sheriff’s deputy who responded to the alleged assault, Carolyn was crying and complaining that her
nose hurt. Carolyn reported that when she refused to go somewhere with Appellant, he pushed her
down on the couch and began repeatedly beating her with his fists. Further, she declared that her
husband sat on top of her and hit her in the face and head with his fists. Both the deputy and a
paramedic, Ben Rasberry, testified that Carolyn’s nose was red and Rasberry observed that
underneath her eyes was red. When Carolyn met with Detective Pamela Dunklin of the Smith
County Sheriff’s Department a few days later. Dunklin observed bruising under Carolyn’s eyes. The
date of the assault, December 30, was three months after the aggravated kidnapping and six days
before Appellant’s trial on the aggravated kidnapping charge.
            At the conclusion of the trial, the jury found Appellant guilty of aggravated kidnapping and
assessed punishment at eighteen years of imprisonment. This appeal followed.
 
Extraneous Offense
            In his first issue, Appellant argues that the trial court abused its discretion by admitting
evidence of an extraneous offense. The State contends that Appellant failed to properly preserve the
issue by objecting each and every time evidence of the extraneous offense was offered. If Appellant
did not waive this issue, the State contends, the trial court did not err because the extraneous offense
was relevant to Appellant’s intent and any error was harmless. We must first decide if Appellant
preserved the issue.
Objection at Trial
            Before opening arguments, the State asked the trial court for a ruling on the admissibility of
an extraneous offense, assault, allegedly committed by Appellant against Carolyn on or about
December 30, 2003. The State contended that the extraneous assault would show Appellant’s intent
to inflict bodily injury. Appellant objected, stating that Carolyn retracted her initial statement that
Appellant committed the alleged assault. Appellant argued that the extraneous offense had no
probative value, but that, if it did, the prejudicial effect substantially outweighed any probative value
and admission of the extraneous offense would deny him a fair trial. The State admitted that Carolyn
requested the charges for the extraneous offense be dropped, but conceded that she did not say the
offense did not occur. Further, the State contended that Carolyn was a reluctant victim because,
during the alleged assault, Appellant threatened to kill Carolyn and all her family. The trial court
“lift[ed] the in limine” under Texas Rule of Evidence 404 (b), found that the extraneous offense was
relevant under Texas Rule of Evidence 403, and, under Texas Rule of Evidence 404(b), allowed
evidence of the extraneous offense to be admitted for the purposes of intent, motive, lack of mistake,
victim’s state of mind, and pertinence to the victim’s relationship with Appellant. At trial, Appellant
failed to further object when evidence of the extraneous offense was offered.
Waiver
            A motion in limine includes an objection to a general category of evidence and a request for
an instruction that the proponent of that evidence approach the bench for a hearing on its
admissibility before offering it. Rawlings v. State, 874 S.W.2d 740, 743 (Tex. App.–Fort Worth
1994, no pet.). The granting or denying of a motion in limine, without more, preserves nothing for
appellate review. Id. at 742. In contrast, Texas Rule of Evidence 103, governing an objection to
offered evidence outside the presence of the jury, requires both specific objections and a ruling on
the admissibility of contested evidence. See id. at 743. We look to the substance of the objection to
determine its effect. Id. at 742. Although the trial court stated that it was lifting the “in limine,”
nowhere during the hearing did either party request an instruction that the State approach the bench
for a hearing on the admissibility of the extraneous offense before offering it. See id. at 743. Instead,
the State requested a ruling on the actual admissibility of the extraneous offense. In substance,
Appellant’s objection resembled an objection to offered evidence outside the presence of the jury and
not a motion in limine. See id. at 742. Therefore, the general rule relating to the effect of a motion
in limine is inapplicable here. 
            With two exceptions, the law in Texas requires a party to object each time inadmissible
evidence is offered. Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). The first
exception is the “running” objection, a traditional method of preserving error that has survived
promulgation of the rules of evidence. Id. The second exception is contained in Texas Rule of
Evidence 103. Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). Rule 103 provides, in
part, that “[w]hen the court hears objections to offered evidence out of the presence of the jury and
rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when
it is admitted before the jury without the necessity of repeating those objections.” Tex. R. Evid.
103(a)(1); Geuder, 115 S.W.3d at 13.
            Appellant did not object to the extraneous offense each time it was offered, nor did Appellant
obtain a running objection from the trial court. However, the trial court heard objections to the
extraneous offense out of the presence of the jury and ruled that such evidence be admitted. See Tex.
R. Evid. 103(a)(1). Thus, it was unnecessary for Appellant to repeat his objections when the
evidence was presented to the jury. See Geuder, 115 S.W.3d at 13. In support of its waiver
argument, the State points out that Appellant extensively cross-examined witnesses and produced one
witness to rebut Carolyn’s testimony regarding the extraneous offense. However, the court of
criminal appeals has held that an admissibility issue is not waived by an attempt to meet, rebut,
destroy, deny, or explain the improperly admitted evidence. Rogers v. State, 853 S.W.2d 29, 35
(Tex. Crim. App. 1993). Consequently, Appellant did not waive this issue by failing to object each
time the evidence was presented or by extensively cross-examining witnesses and producing one
witness in order to meet, rebut, destroy, deny or explain the extraneous offense. Having determined
that this issue is not waived, we must now decide whether the trial court erred in admitting the
extraneous offense.
Admission of Extraneous Offense
            Evidence of other crimes, wrongs or acts, although relevant, is not admissible to prove the
character of a person in order to show action in conformity therewith. Tex. R. Evid. 404(b). 
Extraneous offense evidence may, however, be admissible for other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Tex. R. Evid. 404(b). This list of other purposes for which an extraneous offense might be
admissible is not exhaustive. Castaldo v. State, 78 S.W.3d 345, 349-50 (Tex. Crim. App. 2002). If
extraneous offense evidence is not relevant apart from supporting an inference of character
conformity, it is inadmissible under Rule 404(b). Montgomery v. State, 810 S.W.2d 372, 387 (Tex.
Crim. App. 1990) (op. on reh’g). After the opponent objects to the evidence under Rule 404(b), the
proponent of the evidence has the burden to satisfy the trial court that the evidence has relevance
apart from its tendency to show that he acted in character conformity. Id. Evidence is relevant that
has any tendency to make the existence of any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401;
Montgomery, 810 S.W.2d at 386. 
            In this case, over Appellant’s objection, the trial court admitted testimony that Appellant
assaulted Carolyn on December 30, which was approximately three months after the aggravated
kidnapping and six days before Appellant’s trial on that charge. The State argued that the testimony
was admissible to show Appellant’s intent to inflict bodily injury during the kidnapping and also to
show the victim’s state of mind. The trial court ruled that the evidence was admissible for the
purposes of showing intent, motive, lack of mistake, the victim’s state of mind, and the victim’s
relationship with Appellant. On appeal, the State first points out that the issue of intent was “put
directly into issue” by the indictment. Therefore, it concludes, “it is of obvious relevance that a little
over a week before the start of trial, Appellant physically assaulted the victim again and threatened
to kill her and her family.”
            Intent is a fact of consequence when the indictment requires the State to show beyond a
reasonable doubt that a defendant committed an act with a specific intent. Boudreaux v. State, No.
14-03-00275-CR, 2004 WL 1877714, at *3 (Tex. App.–Houston [14th Dist.] 2004, pet. ref’d) (not
designated for publication)(citing Morgan v. State, 692 S.W.2d 877, 880 (Tex. Crim. App. 1985)).
In this case, the indictment included an allegation that Appellant intended to commit murder or to
inflict bodily injury when he abducted Carolyn. Thus, Appellant’s intent was a fact of consequence. 
Further, because Appellant’s subsequent conduct made it more probable that he intended to inflict
bodily injury on Carolyn during the charged offense, evidence of his subsequent alleged assault of
Carolyn was relevant.
            We must further determine whether intent was in dispute. In Texas, a simple plea of “not
guilty” does not put intent at issue. See Robbins v. State, 88 S.W.3d 256, 260-61 (Tex. Crim. App.
2002). However, intent is a contested issue for purposes of justifying the admission of extraneous
offense evidence if the required intent for the subject offense cannot be inferred from the act itself
or if the defendant presents evidence to rebut the inference that the required intent existed. Hudson
v. State, 112 S.W.3d 794, 803 (Tex. App.–Houston [14th Dist.] 2003, pet. ref’d). Moreover, an
appellant can put his intent at issue through vigorous cross-examination or other means, i.e., the
presentation of various defensive theories. Robbins, 88 S.W.3d at 261. 
            Appellant suggested during his vigorous cross-examination of Carolyn’s sister, law
enforcement personnel, and healthcare worker that Carolyn’s injuries were not caused by an
intentional act of Appellant. Carolyn’s sister and Hartman admitted that they had no personal
knowledge of Carolyn’s injuries. Although Hartman acknowledged that the wrecked vehicle was
badly damaged, burned, and inoperable, Carolyn’s injuries, from his personal observation, were not
the result of the car wreck. Hartman admitted that the area near the wrecked vehicle was dark and
that visibility was very poor. Even though Hartman acknowledged suffering no injuries walking
through the woods, he had the aid of a flashlight. The Smith County Sheriff’s Department K-9
handler stated that he became tangled in a barbed wire fence even with a flashlight. The emergency
room physician acknowledged that a person could suffer injuries to her face, chest, abdomen, back
and neck in a car wreck. Carolyn stated that she and Appellant ran through woods with thick briars
without the aid of a light. The responses of the State’s witnesses raised the defensive theories that
Appellant did not intend to inflict bodily injury on Carolyn, but that she sustained her injuries from
the car wreck or running through the woods. See Robbins, 88 S.W.3d at 261. Because intent was
a fact of consequence, relevant, and controverted by Appellant, we conclude that evidence of the
extraneous offense was admissible under Rule 404(b) for the purpose of showing Appellant’s intent
to inflict bodily injury on Carolyn. See Tex. R. Evid. 404(b). 
            Even if evidence is admissible under Rule 404(b), it may be excluded under Texas Rule of
Evidence 403. Mozon v. State, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999). Under Rule 403,
relevant evidence may be excluded if its probative value is substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. When determining
whether evidence was properly admitted, the question is not whether the evidence is more prejudicial
than probative, but rather, whether the probative value of the evidence is substantially outweighed
by the danger of unfair prejudice. Salazar v. State, 38 S.W.3d 141,151 (Tex. Crim. App. 2001). 
Evidence is unfairly prejudicial when it has “an undue tendency to suggest that a decision be made
on an improper basis.” Reese v. State, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000) (citing
Montgomery, 810 S.W.2d at 389).
            If, as here, a proper Rule 403 objection is made, a trial court must engage in the balancing test
required by the rule. Rankin v. State, 974 S.W.2d 707, 710-11 (Tex. Crim. App. 1996). In reviewing
the trial court’s balancing test determination, an appellate court is to reverse the trial court’s judgment
“rarely and only after a clear abuse of discretion.” Mozon, 991 S.W.2d at 847; Montgomery, 810
S.W.2d at 392. The trial court’s ruling must be measured against the relevant criteria of a Rule 403
inquiry–that is, the proponent’s need for the evidence in addition to determining the relevance of the
evidence. Mozon, 991 S.W.2d at 847. Further, the trial court’s determination must be reasonable
in view of all relevant facts. Reese, 33 S.W.3d at 241 (citing Santellan v. State, 939 S.W.2d 155,
169 (Tex. Crim. App. 1997)).
            The relevant criteria for determining whether the prejudice of an extraneous offense
outweighs its probative value are (1) how probative the evidence is; (2) the potential of the evidence
to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent
needs to develop the evidence; and (4) the proponent’s need for the evidence. Reese, 33 S.W.3d at
240-41. In addressing the State’s need for the evidence, we consider (1) whether the proponent has
other available evidence to establish the fact of consequence that the evidence is admissible to show;
(2) the strength of the other available evidence, if any; and (3) whether the fact of consequence is
related to an issue that is in dispute. See Reese, 33 S.W.3d at 242. When the record reveals that one
or more of the relevant criteria reasonably contributed to a risk that the probative value of the
tendered evidence was substantially outweighed by unfair prejudice, an appellate court should
conclude that the trial court abused its discretion in failing to exclude it. Montgomery, 810 S.W.2d
at 393.
            In the case at hand, the State presented evidence that Appellant abducted and assaulted
Carolyn. Appellant’s defensive theory, developed through cross-examination and presented in
closing argument, was that Carolyn’s injuries resulted from the car wreck or from running through
thick briars and not from any intentional conduct by Appellant. The extraneous offense showed that
Appellant assaulted Carolyn less than three months after the charged offense, at which time Carolyn
reported to the police and a paramedic that Appellant had beaten her repeatedly with his fists. This
evidence was highly probative for the State because Appellant’s conduct and the injuries Carolyn
received during the extraneous assault were sufficiently similar to the charged offense to at least
weaken Appellant’s defensive theory. Thus, this factor weighs in favor of the State.
            The jury would undoubtedly be impressed by Carolyn’s reported assault by Appellant three
months after the charged offense, and this evidence could potentially prejudice the jury against
Appellant. However, this testimony was unlikely to irrationally affect the jury because the
cumulative testimony was not particularly descriptive nor was Carolyn unduly anguished by
Appellant’s actions. Morever, Carolyn testified that she did not believe an assault occurred. Thus,
this factor also weighs in favor of the State. Carolyn’s testimony regarding the assault was a small
part of her entire testimony, and the other three witnesses’ total testimony covered less than thirty
pages of the record out of 342 pages, excluding jury selection. Thus, the time spent developing this
testimony was fairly brief. This third factor weighs in favor of the State. Regarding the State’s need
for the evidence, there was no other available evidence to establish Appellant’s intent to inflict bodily
injury on Carolyn other than her statements to law enforcement and healthcare workers. The strength
of this evidence was cumulative only because there was no direct evidence from any witness 
regarding Appellant’s intent. Further, evidence of this extraneous offense related to the disputed
issue of Appellant’s intent because of its similarity to the charged offense. Consequently, this factor
also favors the State.
            Because all four factors weigh in favor of the State, the probative value of the extraneous
evidence is not substantially outweighed by the dangers of unfair prejudice. See Salazar, 38 S.W.3d
at 151. Further, we hold that the trial court’s determination is not outside the zone of reasonable
disagreement and, therefore, not an abuse of its discretion. See id.; Montgomery, 810 S.W.2d at 391. 
However, even if the admission of the extraneous offense evidence was erroneous, Appellant has not
shown harm.
            The erroneous admission of an extraneous offense does not constitute constitutional error.
Johnson v. State, 84 S.W.3d 726, 729 (Tex. App.–Houston [1st Dist.] 2002, pet. ref’d); Avila v.
State, 18 S.W.3d 736, 741-42 (Tex. App.–San Antonio 2000, no pet.). Any nonconstitutional error
“that does not affect substantial rights must be disregarded.” Tex. R. App. P. 44.2(b); Avila, 18
S.W.3d at 742. In other words, a criminal conviction should not be overturned for nonconstitutional
error if, after examining the record as a whole, we have a fair assurance that the error did not
influence the jury, or had but a slight effect. Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App.
2000).
            In its jury charge, the trial court provided a limiting instruction regarding testimony of
extraneous offenses, requiring that the jury consider the testimony only if the jury believed Appellant
committed such extraneous offenses beyond a reasonable doubt, and then only for determining the
motive, intent, or lack of accident or mistake in the charged offense. Absent evidence to the contrary,
the jury is presumed to follow the instructions set forth in the trial court’s charge. Herrera v. State,
11 S.W.3d 412, 415-16 (Tex. App.–Houston [1st Dist.] 2000, pet. ref’d) (citing Hutch v. State, 922
S.W.2d 166, 172 (Tex. Crim. App. 1996)). Appellant has not rebutted this presumption. Because
the jury was presumed to consider testimony of the extraneous offense only for the purpose of intent
in the charged offense and Appellant did not rebut this presumption, the trial court’s error, if any, in
admitting evidence of the extraneous offense did not influence the jury or had only a slight influence
on its verdict. See Johnson, 84 S.W.3d at 729; Avila, 18 S.W.3d at 742. Accordingly, Appellant’s
first issue is overruled.
 
Jury Charge
            In his second issue, Appellant argues that the trial court erred by failing to properly instruct
the jury. More specifically, Appellant contends that the jury charge allowed the jury to convict him 
of aggravated kidnapping without requiring proof that he committed or attempted to commit murder
as alleged in the indictment. Appellant admits that he did not object to the jury charge. The State
contends that Appellant cannot show that there was error or that the error, if any, was so egregious
and created such harm that he was denied a fair and impartial trial. Moreover, the State argues that
where, as here, the indictment presents allegations of different methods of committing the charged
offense in the conjunctive, the jury may be charged in the disjunctive. 
Applicable Law
            Any error committed by the court in a jury charge is waived if a defendant fails to timely
object and request submission of the instruction, unless the harm was egregious. Jones v. State, 859
S.W.2d 537, 542 (Tex. App.–Houston [1st Dist.] 1993, pet. ref’d) (citing Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984)). The standard for egregious harm is based on article 36.19
of the Texas Code of Criminal Procedure and explained in Almanza. See Stokes v. State, 74 S.W.3d
48, 50 (Tex. App.–Texarkana 2002, pet. ref’d); Shavers v. State, 985 S.W.2d 284, 291 (Tex. App.
–Beaumont 1999, pet. ref’d). In Almanza, the court determined that if no proper objection was made
at trial to charge error, the accused must claim the error was “fundamental” and will obtain a reversal
only if the error is so egregious and created such harm that the accused did not have a fair and
impartial trial. Almanza, 686 S.W.2d at 171. Further, in evaluating the degree of harm, jury charge
error should be examined in view of the entire jury charge, the state of the evidence, including the
contested issues and weight of the probative evidence, the argument of counsel, and any other
relevant information revealed by the record of the trial as a whole. Id.; see also Hutch v. State, 922
S.W.2d at 171. To establish egregious harm, it is not essential to show direct evidence of harm. 
Stokes, 74 S.W.3d at 50. However, an appellant is required to show actual, not theoretical, harm. 
Cormier v. State, 955 S.W.2d 161, 164 (Tex. App.–Austin 1997, no pet.). 
            Alternative pleading of the differing methods of committing one offense may be charged in
one indictment. Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Although an
indictment may allege the differing methods of committing the offense in the conjunctive, it is proper
for the jury to be charged in the disjunctive. Id.; White v. State, 890 S.W.2d 69, 72 (Tex. Crim. App.
1994) (Baird, J., concurring); Vasquez v. State, 665 S.W.2d 484, 486 (Tex. Crim. App. 1984). 
Where the alternative theories of committing the same offense are submitted to the jury in the
disjunctive, it is appropriate for the jury to return a general verdict if the evidence is sufficient to
support a finding under any of the theories submitted. Kitchens, 823 S.W.2d at 258; White, 890
S.W.2d at 72 (Baird, J., concurring). 
Analysis
            A person commits aggravated kidnapping if he intentionally or knowingly abducts another
person with the intent to perpetrate any of six aggravating circumstances, including facilitating the
commission of a felony or the flight after the attempt or commission of a felony or inflicting bodily
injury on the person abducted. Tex. Pen. Code Ann. § 20.04(a)(3),(4) (Vernon 2003). The
indictment in the case at bar specifically alleged that Appellant kidnapped Carolyn “with the intent
to facilitate the commission of a felony, to wit murder, or to facilitate the flight after the attempt or
commission of said felony and inflict bodily injury.” (Emphasis added.) The jury charge authorized
the jury to find Appellant guilty if he intentionally or knowingly abducted Carolyn “1) with the intent
to facilitate the commission of a felony, to-wit: murder, or to facilitate the flight after the attempt or
commission of said felony; or 2) with the intent to inflict bodily injury.” (Emphasis added.) As
previously stated, even if the indictment alleges different means of committing the offense in the
conjunctive, it is still proper for the jury to be charged in the disjunctive. See Kitchens, 823 S.W.2d
at 258; White, 890 S.W.2d at 72 (Baird, J., concurring). Therefore, the trial court did not err by
including the complained-of paragraph in the jury charge.
            Morever, Carolyn testified that after Appellant abducted her from her mother’s house, he
choked her, that she may have lost consciousness, and that she thought he was going to kill her.
Carolyn reported to medical personnel and law enforcement that Appellant threatened to kill her, that
he choked her to the point of passing out, and that she lost consciousness momentarily. This
evidence shows that Appellant abducted Carolyn with the intent to facilitate the commission of a
felony, murder. Additionally, Carolyn reported that Appellant hit and kicked her repeatedly. This
evidence shows that Appellant intended to inflict bodily injury on Carolyn. Thus, the evidence was
sufficient to support a finding under either theory submitted to the jury. See Kitchens, 823 S.W.2d
at 258; White, 890 S.W.2d at 72 (Baird, J., concurring). Therefore, even if Appellant had shown
error in the jury charge, he has failed to show egregious harm. See Almanza, 686 S.W.2d at 171. 
Accordingly, Appellant’s second issue is overruled.
 
Disposition
            The judgment of the trial court is affirmed.
 
 
 
                                                                                                   JAMES T. WORTHEN 
                                                                                                               Chief Justice
 
 
Opinion delivered July 20, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.



















(DO NOT PUBLISH)